COMMONWEALTH *vs.* FABIAN PERKINS
(and nineteen companion cases[1]).

Worcester. February 7, 2013. - June 14, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Search and Seizure,* Arrest, Motor vehicle, Expectation of privacy, Plain view, Probable cause, Search incident to lawful arrest. *Constitutional Law,* Search and seizure. *Probable Cause. Practice, Criminal,* Suppression of evidence by prosecutor. *Firearms. Motor Vehicle,* Firearms. *Controlled Substances.*

A Superior Court judge did not err in granting the criminal defendants' motions to suppress a firearm and drugs seized during a warrantless search of a vehicle following a stop for a traffic violation, where there was ample evidence to support the judge's finding that the firearm was not in plain view [603-604]; where the search was not incident to the arrest of the driver given that, at the time of the search, the driver was handcuffed and not within reach of the vehicle and the vehicle's two passengers had fled and made no effort to return to the vehicle, and given that officers could not reasonably believe that the vehicle contained evidence relevant to the driver's offense of operating the vehicle without a valid driver's licence [605-606]; and where the search was not justified under the doctrine of abandonment given that, although the vehicle's two passengers fled the scene of the arrest, there was no evidence that the passengers intended permanently to relinquish control of items in the vehicle [606].

INDICTMENTS found and returned in the Superior Court Department on June 25, 2008.

Pretrial motions to suppress evidence were heard by *Tina S. Page,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen J. Carley,* Assistant District Attorney (*Michelle R. King,* Assistant District Attorney, with him) for the Commonwealth.

*Vincent F. Ricciardi, Jr.,* for Fabian Perkins.

[1] Five against Fabian Perkins, seven against Tareek Hendricks, and seven against Elijah Cherry.

*Brad P. Bennion* for Tareek Hendricks.

*J. Gregory Batten* for Elijah Cherry.

LENK, J. On a May evening in 2008, a Worcester police officer pulled over an automobile for a traffic offense. Once the automobile came to a stop, defendants Tareek Hendricks and Elijah Cherry, both passengers in the vehicle, left the automobile and walked toward an adjacent apartment building. The officer ordered them to return to the automobile, but they disregarded the order and hastily left the scene. Defendant Fabian Perkins, the driver of the automobile, was found to possess a learner's permit but not a valid driver's license. He was arrested for driving without a valid license. Subsequently, the arresting officer, and another officer who had arrived at the scene, searched the automobile and found a firearm, marijuana, and a substance believed to be "crack" cocaine. Each of the defendants was charged with various drug and firearm offenses.

Prior to trial, the defendants moved to suppress the evidence seized from the automobile. After an evidentiary hearing, a Superior Court judge allowed the defendants' motions to suppress, ruling that the warrantless search of the automobile was not justified under any exception to the warrant requirement. The Commonwealth's motion to reconsider was denied. The Commonwealth appealed, and we transferred the case to this court on our own motion.

Because there was no error in the judge's finding that the firearm was not in plain view, because the search cannot be justified as a search incident to arrest, and because the Commonwealth failed to establish that Hendricks and Cherry abandoned the contents of the automobile when they left the scene, we agree with the judge's conclusion that the search of the automobile constituted an unlawful warrantless search requiring suppression of the evidence seized. Accordingly, we affirm.

1. *Background.* "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002). The motion judge found the following facts.

On May 18, 2008, at approximately 10:30 P.M., Officer George Lavin of the Worcester police department saw an automobile drive through an intersection without stopping at a stop sign. Lavin activated the lights on his cruiser, and followed behind the automobile. The automobile traveled between fifty to one hundred yards, less than one block, before stopping in the parking lot of a multi-unit residential building.[2] The parking lot was well lit. Lavin parked approximately ten feet behind the automobile and called for backup. He saw two male passengers, Hendricks and Cherry, leave the automobile and walk toward the building. Lavin ordered both men to get back into the automobile. One of the men began running toward the building, while the other hastened his pace.

Perkins, the driver of the automobile, remained seated and identified himself to Lavin. Lavin ordered Perkins out of the automobile and pat frisked him. Lavin asked Perkins for identification and for the names of the passengers who had left the scene. Perkins said that he did not know the passengers. He produced a learner's permit, which required him to have a licensed driver with him while operating an automobile. See G. L. c. 90, § 8B. Lavin again asked Perkins to identify the passengers, but Perkins made no response. At that point, Lavin handcuffed Perkins.

Officer Timothy Segur of the Worcester police department arrived at the scene within three minutes of receiving Lavin's call for assistance. After Lavin related the events summarized above, Segur entered the building and checked the first-floor common areas, including the hallway. He was inside the building for less than one minute before returning to the automobile. Segur asked Lavin if he had searched the automobile, and Lavin said, "No." The driver's side door was ajar, and the interior light was on. The officers did not observe any contraband in plain view. However, upon conducting a search of the interior of the automobile, the officers found a firearm, marijuana, and a substance

---

[2]While the judge's findings of fact might be read to suggest that Worcester police Officer George Lavin activated the lights on his cruiser after the automobile had already come to a stop in the parking lot, the relevant evidence before the judge indicates that Lavin activated his lights before the automobile stopped in the parking lot.

believed to be "crack" cocaine. At least six additional police officers arrived at the scene in response to Lavin's call for backup and entered the building in search of Hendricks and Cherry. Hendricks was located and arrested in one of the apartments in the building. Cherry was apprehended while leaving the building through a back door.

2. *Discussion.* Under the Fourth Amendment to the United States Constitution, warrantless searches are "per se unreasonable." *Katz* v. *United States*, 389 U.S. 347, 357 (1967). When a search is conducted without a warrant, the burden is on the Commonwealth to show that the search "falls within a narrow class of permissible exceptions" to the warrant requirement. *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). If the Commonwealth cannot show that the search falls within an exception to the warrant requirement, all evidence obtained as a result of the search must be suppressed. See *Mapp* v. *Ohio*, 367 U.S. 643, 655 (1961).

Here, the search of the automobile was conducted without a warrant. It was, therefore, presumptively unreasonable. See *Katz* v. *United States*, *supra*. The Commonwealth maintains that the evidence found in the automobile is nonetheless admissible, on three different theories: first, the Commonwealth contends that, contrary to the judge's finding, the firearm was in plain view, thereby providing probable cause for the officers to search the automobile; second, the Commonwealth contends that the search was permissible as a search incident to Perkins's arrest; and third, the Commonwealth contends that Hendricks and Cherry abandoned the contents of the automobile, and thereby any reasonable expectation of privacy therein, when they left the scene.[3]

a. *Plain view.* "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its

---

[3]The narrow question before us is whether the motion judge properly suppressed the evidence found in the automobile. Determination of this question does not require us to address the propriety of Lavin's order to Hendricks and Cherry to return to the automobile. While the Commonwealth urges us to establish a bright-line rule allowing police officers to "temporarily detain all passengers in a properly-stopped vehicle with no further justification necessary beyond the initial stop," see *Arizona* v. *Johnson*, 555 U.S. 323, 327 (2009), quoting *Brendlin* v. *California*, 551 U.S. 249, 255 (2007), we leave this issue for another day.

incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993). In addition, under art. 14 of the Massachusetts Declaration of Rights, the plain view doctrine applies only where police come across the object inadvertently. *Commonwealth* v. *Balicki*, 436 Mass. 1, 8-9 (2002). Here, the Commonwealth contends that Lavin and Segur saw the firearm in plain view on the front passenger seat of the automobile, and that upon seizing the firearm the officers had probable cause to search the automobile for further contraband. See *Commonwealth* v. *Stack*, 49 Mass. App. Ct. 227, 235 (2000). However, the motion judge found that the firearm was not in plain view on the front passenger seat. Because there was ample evidence to support the judge's finding, we adopt it and conclude that the firearm was not in plain view. See *Commonwealth* v. *Scott, supra.*

The Commonwealth argues that the judge's finding was erroneous, because both Lavin and Segur testified on direct examination that, prior to searching the automobile, they saw the firearm lying in plain view on the front passenger seat. On cross-examination, however, Lavin testified that when he first approached the automobile he used his flashlight to illuminate the interior of the vehicle, and he did not see a weapon. He additionally testified on cross-examination that, when Perkins stepped out of the automobile, the vehicle's interior light was illuminated, and still Lavin did not see a weapon inside. Further, Lavin testified on direct examination that he handcuffed Perkins after finding the firearm, but then admitted on cross-examination that he in fact handcuffed Perkins before finding the firearm. Finally, Lavin and Segur testified inconsistently as to the manner in which they saw the firearm on the front passenger seat.

Given the foregoing and the deference we accord to the judge's credibility determinations, see *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 321 (2001), quoting *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), we discern no error in the judge's finding on this point. The Commonwealth failed to prove that the firearm was found in plain view, and neither the seizure of the firearm nor the search of the automobile may be justified on this basis.

b. *Search incident to arrest.* "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona* v. *Gant*, 556 U.S. 332, 338 (2009), citing *Weeks* v. *United States*, 232 U.S. 383, 392 (1914). "The purpose, long established, of a search incident to an arrest is to prevent an individual from destroying or concealing evidence of the crime for which the police have probable cause to arrest, or to prevent an individual from acquiring a weapon to resist arrest or to facilitate an escape." *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 (1991). Thus, police may search an automobile incident to the arrest of its driver only where the arrestee "is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona* v. *Gant*, *supra* at 346.

Here, Lavin had probable cause to arrest Perkins for operating a motor vehicle without a license. See G. L. c. 90, § 8B ("The holder of a learner's permit who operates a motor vehicle without a duly licensed driver . . . who is occupying a seat beside the driver shall be deemed to be operating a motor vehicle without being duly licensed . . ."); G. L. c. 90, § 21 (authorizing arrest for operating a motor vehicle without a license in violation of G. L. c. 90, § 10). However, when Lavin and Segur searched the automobile, Perkins was secured in handcuffs outside the vehicle and was not within reaching distance of the interior of the automobile. The officers accordingly could not reasonably have believed that he might access weapons inside the automobile. See *Arizona* v. *Gant*, *supra* at 344. Further, because Perkins was arrested for operating a motor vehicle without a valid license, the officers could not reasonably have believed that "evidence of the offense for which he was arrested might have been found therein." *Id.*

The Commonwealth asserts that the officers were nonetheless justified in searching the automobile for weapons because Hendricks and Cherry remained at large and posed a potential, ongoing threat to them. This argument is unpersuasive. Prior to the search, passengers Hendricks and Cherry left the parking lot and made no effort to return. At the time of the search, there "was no danger that [they] could draw a weapon from the vehicle." *Commonwealth* v. *Santiago, supra.* Contrast *Com-*

*monwealth* v. *Brillante*, 399 Mass. 152, 155 (1987) (search justified where suspects remained unsecured beside vehicle). We therefore discern no error in the motion judge's conclusion that "the Commonwealth has failed to establish that the officers needed to search the car to ensure their safety or that any other applicable exception to the warrant requirement would justify the search of the car."

c. *Abandonment.* Where an individual abandons property, he or she retains no reasonable expectation of privacy in that property under the Fourth Amendment. See *California* v. *Greenwood*, 486 U.S. 35, 40-41 (1988). The Commonwealth contends that Hendricks and Cherry abandoned the contraband found in the automobile when they left the scene, and, as a result, they cannot challenge the admission of such contraband as evidence against them.

However, as the motion judge determined, "there is no evidence that [Hendricks and Cherry], by leaving items in a closed car, intended to permanently relinquish control of those items." See *Commonwealth* v. *Paszko*, 391 Mass. 164, 184 (1984), quoting *United States* v. *Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) ("Abandonment is primarily a question of intent . . ."). Accordingly, Hendricks and Cherry are not precluded on this basis from challenging the admission of the contraband as evidence against them.

3. *Conclusion.* The Commonwealth has failed to establish that the firearm was found in plain view, that the search of the automobile was valid as a search incident to arrest, or that Hendricks and Cherry abandoned the property found in the automobile. For these reasons, the evidence seized pursuant to the warrantless search of the automobile was properly suppressed.

*Order allowing motions to suppress affirmed.*