*Quioly Shikell Demby v. State of Maryland*, No. 11, September Term 2014

**CONSTITUTIONAL LAW — FOURTH AMENDMENT — SEARCH INCIDENT TO ARREST —** The warrantless search of the digital information on an arrestee's cell phone incident to a lawful arrest, save for case-specific exigent circumstances, is unreasonable in violation of the Fourth Amendment. Under this rule, the police officer may examine only the physical aspects of a cell phone in the interest of officer safety. The search of the most recent text messages on an arrestee's cell phone went beyond the mere physical search of the phone and violated the arrestee's Fourth Amendment rights.

**CONSTITUTIONAL LAW — FOURTH AMENDMENT — GOOD FAITH DOCTRINE —** Courts generally will not suppress evidence where law enforcement officers act in objectively reasonable reliance on a warrant or statute or, as was decided in *Davis v. United States*, 131 S. Ct. 2419 (2011), binding precedent under which their conduct is lawful. This principle is known as the good-faith exception to the exclusionary rule. The police officer's warrantless search of a cell phone incident to the defendant's lawful arrest, prior to the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014), was done in reasonable reliance on then-binding precedent, *United States v. Robinson*, 414 U.S. 218 (1973). By application of the good faith doctrine, the information obtained from the cell phone is not suppressed.

Circuit Court for Caroline County
Case No. 05-K-12-009321
Argued: January 8, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 11

September Term, 2014

QUIOLY SHIKELL DEMBY

v.

STATE OF MARYLAND

Barbera, C.J.,
*Harrell
Battaglia
Greene
McDonald
Watts
Raker, Irma S. (Retired, Specially
Assigned)
                          JJ.

Opinion by Barbera, C.J.

Filed: July 27, 2015

*Harrell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Forty-two years ago, the Supreme Court established in *United States v. Robinson*, 414 U.S. 218 (1973), a bright-line rule authorizing police to search any object found within the temporal and spatial scope of a search incident to a lawful arrest. Last year, in *Riley v. California*, 134 S. Ct. 2473 (2014), the Court held that this exception to the warrant requirement of the Fourth Amendment does not include the search of cell phone data found during an otherwise lawful search incident to arrest. We are called upon in this case to decide whether Petitioner Quioly Shikell Demby was entitled, by application of the rule established in *Riley*, to suppression of evidence obtained as the result of the search of a cell phone incident to his lawful arrest in 2012.

For the reasons that follow, we conclude that the officer who searched Petitioner's cell phone reasonably relied on *Robinson*, which at the time of the search was binding precedent in Maryland. Consequently, by application of the good faith doctrine, as explicated in *Davis v. United States*, 131 S. Ct. 2419 (2011), Petitioner was not entitled to have the cell phone data excluded at the trial at which he was convicted of a drug-related offense, based in part on that evidence.

I.

The following facts were adduced at a hearing conducted on Petitioner's motion to suppress the evidence resulting from the search of the cell phone. Corporal Leonard Nichols ("Corporal Nichols"), the Maryland State Police officer who arrested Petitioner and searched the cell phone, was the only witness to testify at the hearing.

Corporal Nicholas testified that, on May 24, 2012, he received information from a confidential informant about a potential drug deal at a park on Red Bridges Road in

Caroline County, Maryland. The informant identified one man involved as Steve Lepore and the other as "Oly." Sometime later that same day, the Caroline County dispatch center relayed that it had received an anonymous call from an individual who saw a person traveling up and down Red Bridges Road on a golf cart, meeting other subjects in their vehicles.

Corporal Nichols and an undercover police officer arrived at the scene, where Corporal Nichols observed a golf cart parked beside a Nissan Altima. A man, later identified as Steve Lepore, was standing between the vehicles on the driver's side of the Altima. Petitioner was sitting in the passenger's seat of the Altima, and another man was sitting in the driver's seat.

Corporal Nichols approached the vehicles, identified himself as a police officer, and told the individuals that he was responding to complaints regarding potential drug activity. He then asked the individuals if they were in possession of anything illegal. Mr. Lepore replied that he had a "bowl" in his pocket.[1] Corporal Nichols searched Mr. Lepore and found a bowl containing marijuana. Petitioner said that he had pills and presented to Corporal Nichols an unlabeled prescription pill bottle containing 11 pills. Based on his experience in the Drug Task Force, Corporal Nichols identified seven pills as oxycodone and four other pills as oxycodone acetaminophen. Petitioner told Corporal Nichols that he received a prescription for the pills from the hospital.

---

[1] Corporal Nichols testified that he believed Mr. Lepore was referring to a device used to smoke marijuana.

Corporal Nichols arrested Petitioner and, along with other officers who by then had arrived as backup, searched the vehicle in which Petitioner had been sitting. During the search of the car, the police noticed on the dashboard a cell phone repeatedly ringing and "sending out tones." Corporal Nichols testified that the phone was not a smartphone, but he could not remember whether it was a flip phone or a slide phone, and he could not determine whether the phone was receiving calls or text messages. The corporal asked who owned the phone, and Petitioner said that it was his.

Corporal Nichols then "opened" the phone and viewed the most recent text messages. Based on his training and experience, Corporal Nichols understood the messages to mean that the senders were looking to buy pills from Petitioner. Corporal Nichols took possession of the cell phone and subsequently obtained a warrant to search the data within the phone. Execution of the warrant provided the police with the same data that Corporal Nichols observed at the time of Petitioner's arrest, and more.

Corporal Nichols explained his decision to search the cell phone at the arrest scene. He testified, based on his personal experience, that cell phones can pose safety concerns for police officers because a suspect might have a plan to notify third parties to show up if the police arrived. He added that the evidence on a cell phone may be destroyed by remote wiping.[2] In this case, however, Petitioner was cooperative during the search and the cell phone was not remotely wiped.

---

[2] A cell phone can be wiped remotely when, by request to the cellular provider, the provider resets the phone to factory settings, erasing all data that had been in the device.

3

Petitioner sought suppression of all evidence seized from him at or about the time of his arrest arguing, as eventually was held in *Riley*, *supra*, that the warrantless search of a cellular device is unreasonable under the Fourth Amendment. The court denied the motion to suppress the cell phone evidence on the ground that it was the result of a valid search incident to arrest. The court explained that the officer's search of the cell phone was "cursory"; the officer merely seized the device and looked at the recent text messages. The court found "nothing unreasonable in opening the phone and looking at it," but noted that "every case is fact specific and . . . if Trooper [sic] Nichols had gone a lot further into the phone than he did[,]" it may have affected the ruling.

The court ruled in the alternative that, even if the search was unreasonable, the evidence derived therefrom nonetheless was admissible by application of the inevitable discovery exception to the exclusionary rule. The court reasoned that, even without the information that the arresting officer obtained from searching the cell phone, the affidavit in support of the search warrant contained "sufficient evidence to present to a magistrate [to] indicate that there was drug dealing going on" at the park, and therefore, the police would have discovered the same data, while executing the warrant, that the arresting officer had found.

After the motion to suppress was denied, Petitioner waived his right to a jury trial, was tried by way of an agreed statement of facts on the sole count of possession of oxycodone with intent to distribute, and was convicted. He was sentenced to four years of imprisonment, all suspended, and three years of probation.

Petitioner noted an appeal to the Court of Special Appeals. On November 22, 2013, we issued a writ of certiorari on our own motion, ordered that the parties file briefs before this Court, and set the case for oral argument. We then stayed the proceedings pending the United States Supreme Court's decisions in *Riley v. California, cert. granted*, 134 S. Ct. 999 (2014), and *United States v. Wurie, cert. granted*, 134 S. Ct. 999 (2014). On June 25, 2014, the Supreme Court issued a consolidated opinion in those cases, *Riley v. California*, 134 S. Ct. 2473 (2014).

We issued the writ to review the following questions:

1. Were [Petitioner]'s Fourth Amendment rights violated when an officer, pursuant to a valid arrest, read text messages to and from others located on his cell phone without a warrant?

2. Are the independent source or inevitable discovery doctrines applicable where an officer, using information found by warrantlessly searching an individual's cell phone, later obtains a search warrant for that cell phone's contents?

## II.

Petitioner's argument, reduced to its essence, is that, under *Riley*, the arresting officer's warrantless search of his cell phone violated the Fourth Amendment. Therefore, Petitioner adds, the evidence obtained as a result of that search should have been excluded at trial.

The State's answer to that argument is multi-faceted. The State argues, first, that Corporal Nichols acted reasonably in searching the cell phone incident to Petitioner's arrest because, unlike in *Riley*, the corporal testified that the cell phone was not a smartphone,

5

but rather, a "flip" or "slide" phone, which he merely "opened" and "observed the first, the most recent text messages that were currently coming in . . . ." The State emphasizes Corporal Nichol's testimony that he did not search further and, instead, retained the phone in order to obtain a search warrant. The State, relying essentially on the "plain view doctrine", *see*, *e.g.*, *Horton v California*, 496 U.S 128 (1990), argues that the facts of this case take it outside the reach of the rule, established in *Riley*, that officers generally must obtain a warrant before searching a cell phone.

The State also argues that, even if the Fourth Amendment was violated, Petitioner was not entitled to suppression of the evidence obtained by the police. In support of that argument, the State invokes the doctrines of inevitable discovery, *see Nix v. Williams*, 467 U.S. 431 (1984), and "good faith." It is unnecessary to address every argument the parties make in support of their respective sides of the case because, in the end, the question of whether Petitioner was entitled to suppression of the evidence that the police obtained from the cell phone is controlled by application of the good faith doctrine.

III.

Petitioner's arrest occurred on May 24, 2012, two years before the Supreme Court issued *Riley*. This case, then, is controlled by *Spence v. State*, ___ Md. ___ (filed July 27, 2015). In *Spence*, we reviewed *Riley*[3] and determined, by application of its holding, that the search of Spence's cell phone at the time of his arrest violated *Riley*. We went on to

---

[3] *See also Sinclair v. State*, ___ Md. ___ (filed July 27, 2015), for a thorough discussion of *Riley*.

hold that, under *Davis v. United States*, 131 S. Ct. 2419, 2427–28 (2011), the police officer who had searched Spence's cell phone did so in reasonable reliance on then-binding precedent in Maryland, *United States v. Robinson*, 414 U.S. 218 (1973). Under *Robinson*, the search of the cell phone would have been lawful as a search incident to Spence's arrest. *See Spence*, ___ Md. at ___ (slip op. at 12).

We need not repeat here the analysis that led us to our decision in *Spence*. It suffices that, in material respect, the present case is identical to *Spence*, and the outcome is therefore the same. Corporal Nichols, like the arresting officer in *Spence*, searched Petitioner's cell phone in objectively reasonable reliance upon *Robinson* and its Maryland progeny. By application of the good faith doctrine, Petitioner, like Spence, is not entitled to suppression of the data obtained from the cell phone. It follows that the suppression ruling of the Circuit Court was correct and must be affirmed.

**JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AFFIRMED; COSTS TO BE PAID BY PETITIONER.**