COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and O'Brien
Argued at Norfolk, Virginia

GEOFFREY NARCISCO RIVERA
                                                    OPINION BY
v.        Record No. 1931-14-1                  JUDGE TERESA M. CHAFIN
                                                  NOVEMBER 10, 2015
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

Afshin Farashahi for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


The Circuit Court of the City of Virginia Beach convicted Geoffrey Narcisco Rivera of

possession of marijuana with the intent to distribute in violation of Code § 18.2-248.1 and

conspiracy to distribute marijuana in violation of Code §§ 18.2-256 and 18.2-248.1.  On appeal,

Rivera contends that the circuit court erred by denying his motion to suppress evidence obtained

from the warrantless search of his cell phone and incriminating statements that he made

following the search.  Rivera argues that the Supreme Court's decision in Riley v. California,

134 S. Ct. 2473 (2014),[1] applied retroactively to his case and, pursuant to that decision, he argues

that the warrantless search of his cell phone violated the Fourth Amendment.  The

Commonwealth concedes that the warrantless search of Rivera's cell phone was illegal, but

contends that the exclusionary rule does not mandate the suppression of the evidence obtained

through the search under the circumstances of this case.  For the reasons that follow, we agree

_____
[1] The opinion of the Supreme Court actually covers two cases, the other being United
States v. Wurie.

with the Commonwealth that the exclusionary rule does not require the suppression of the evidence at issue, and accordingly, we affirm the circuit court's decision.

## I. BACKGROUND

"When reviewing a denial of a suppression motion, we review the evidence 'in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'" Elliott v. Commonwealth, 61 Va. App. 48, 51, 733 S.E.2d 146, 148 (2012) (quoting Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008)). So viewed, the evidence established that officers from the Norfolk Police Department informed detectives from the Virginia Beach Police Department that a package containing marijuana would be delivered to an apartment located in the City of Virginia Beach on October 2, 2013. The Virginia Beach officers set up surveillance around the apartment building on that day. Eventually, they saw an individual carrying a green case arrive at the building and enter an apartment.

Shortly after this individual arrived, a narcotics detective knocked on the door to the apartment. When an individual who lived in the apartment answered the door, the detective immediately smelled marijuana. He saw three men in the apartment: the individual that answered the door, the individual that arrived with the case, and Rivera. He also saw marijuana smoking paraphernalia in plain view. In light of these observations, the detective detained the occupants of the apartment until the police could obtain a search warrant for the premises. The individual that lived in the apartment, however, consented to a search of his residence and officers found marijuana in the green case.

During the search of the apartment, the police interviewed each of the detained suspects. Detective Daniel Fogarty questioned Rivera, and he confiscated his cell phone before he started the interview. Although Rivera initially claimed that he was unaware of the presence of

marijuana in the apartment, he later admitted that he had intended to acquire eight ounces of marijuana that day to sell to another individual.

Following this confession, Detective Fogarty viewed the text messages on Rivera's cell phone to determine whether they referenced the drug transaction. He read several text messages discussing the pricing and sale of marijuana. When confronted with these text messages, Rivera made additional incriminating statements regarding marijuana transactions. Detective Fogarty never obtained a warrant to search Rivera's cell phone.

Rivera moved to suppress the evidence obtained from his cell phone and the incriminating statements that he made to Detective Fogarty regarding the text messages. On April 9, 2014, the circuit court heard evidence on the suppression motion. After hearing the evidence, the circuit court delayed its ruling on the motion until the Supreme Court of the United States issued its decision in Riley. The Supreme Court issued its opinion on June 25, 2014.

After considering additional briefing and argument from the parties addressing the impact of the Riley decision, the circuit court denied Rivera's motion to suppress. Although the Commonwealth conceded that Detective Fogarty's search of the cell phone violated the Fourth Amendment under Riley, the circuit court concluded that the exclusionary rule did not warrant the suppression of the evidence collected from the phone, explaining that "the police officers were using the best practices in place at the time and thus using the exclusionary rule in this case would not deter police misconduct." Rivera entered conditional guilty pleas to the charges against him and appealed the circuit court's decision denying his motion to suppress to this Court.[2]

---

[2] While Judge Glenn R. Croshaw presided over the suppression hearing and denied Rivera's motion to suppress, Judge Edward W. Hanson, Jr., convicted and sentenced him.

## II.  ANALYSIS

In reviewing a trial court's denial of a motion to suppress, "we determine whether the accused has met his [or her] burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error."  Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009).  This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).  "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment."  Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (*en banc*) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

In Riley, the Supreme Court held that police officers generally must obtain a warrant to search a cell phone seized incident to an individual's arrest.  Riley, 134 S. Ct. at 2493.  Although the Supreme Court decided Riley after the search at issue in the present case was conducted, it issued its opinion in Riley before Rivera was convicted of the charged offenses.  On appeal, Rivera argues that Riley retroactively applied to his case and that the warrantless search of his cell phone violated the Fourth Amendment.  We agree.  "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ."  Griffith v. Kentucky, 479 U.S. 314, 328 (1987).  As Riley was decided by the Supreme Court while Rivera's case was pending before the circuit court, it applied to his case.

The Commonwealth conceded at trial, and now concedes on appeal, that Riley retroactively applied to Rivera's case and that the warrantless search of his cell phone violated

the Fourth Amendment.[3] Despite the unconstitutionality of the warrantless search, however, the Commonwealth contends that the circuit court correctly concluded that the exclusionary rule did not apply under the circumstances of this case. Accordingly, the crucial issue presented on appeal involves the remedy available to Rivera rather than a substantive Fourth Amendment argument. The issue that we must decide concerns the application of the exclusionary rule to the evidence obtained from the search of Rivera's cell phone rather than the retroactive application of Riley. See Davis v. United States, 131 S. Ct. 2419, 2431 (2011) ("Retroactive application does not . . . determine what 'appropriate remedy' (if any) the defendant should obtain. Remedy is a separate, analytically distinct issue." (citations omitted)).

The Commonwealth cites Davis as the primary support for its appellate argument. Davis involved the application of the exclusionary rule to evidence obtained prior to the change in Fourth Amendment precedent brought about by Arizona v. Gant, 556 U.S. 332 (2009). In Gant, the Supreme Court held that police officers may search an automobile without a warrant incident to a recent occupant's arrest only when (1) the arrestee is "within reaching distance of the vehicle" during the search, or (2) "it is reasonable to believe the vehicle contains evidence of the offense of arrest." Gant, 556 U.S. at 346; see also Davis, 131 S. Ct. at 2425. Gant expressly limited the Court's prior decision in New York v. Belton, 453 U.S. 454 (1981), which held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Belton, 453 U.S. at 459-60; see also Gant, 556 U.S. at 343.

The Supreme Court began its analysis in Davis by noting that while "[t]he Fourth Amendment protects the right to be free from 'unreasonable searches and seizures,' . . . it is

---

[3] Although we are generally precluded from accepting concessions of law made on appeal, see Copeland v. Commonwealth, 52 Va. App. 529, 531-32, 664 S.E.2d 528, 529 (2008), we agree with the Commonwealth's concessions based on our independent review of the record.

silent about how this right is to be enforced." Davis, 131 S. Ct. at 2423. "To supplement the bare text, [the Supreme] Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." Id. "Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search. The rule's sole purpose . . . is to deter *future* Fourth Amendment violations." Id. at 2426 (emphasis added) (citations omitted) (quoting Stone v. Powell, 428 U.S. 465, 486 (1976)).

The Supreme Court further explained that "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Id. at 2427.

> [T]he deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. Herring v. United States, 555 U.S. 135, 143 (2009). When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. Id. at 144. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, United States v. Leon, 468 U.S. 897, 909 (1984) (internal quotation marks omitted), or when their conduct involves only simple, "isolated" negligence, Herring, 555 U.S. at 137, the "'deterrence rationale loses much of its force,'" Leon, 468 U.S. at 919 (quoting United States v. Peltier, 422 U.S. 531, 539 (1975)), and exclusion cannot "pay its way." Id. at 908 n6.

Davis, 131 S. Ct. at 2427-28.

Applying these principles to the case before it, the Supreme Court concluded that the exclusionary rule did not apply to evidence seized by police officers during the search of a suspect's automobile following his arrest. Although the search at issue violated the rule announced in Gant, the Supreme Court noted that the search was legal at the time it was conducted under Belton and Seventh Circuit precedent following that case. See id. at 2428. The Court explained that "the officers who conducted the search did not violate [the suspect's] Fourth

Amendment rights deliberately, recklessly, or with gross negligence," but rather, were acting "in strict compliance with binding precedent" when they conducted the search. Id. at 2428-29.

The Court reasoned that "when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." Id. at 2429. The Court concluded that "the harsh sanction of exclusion 'should not be applied to deter objectively reasonable law enforcement activity[,]'" and held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." Id. (quoting Leon, 478 U.S. at 919).

In the present case, Rivera attempts to distinguish Davis by arguing that no binding precedent supported the warrantless search of his cell phone. His argument, however, is misplaced. In United States v. Robinson, 414 U.S. 218 (1973), the Supreme Court established a bright-line rule concerning the search of an individual incident to his or her arrest. In Robinson, the Court explained:

> A custodial arrest of a suspect based on probable cause is a
> reasonable intrusion under the Fourth Amendment; that intrusion
> being lawful, a search incident to the arrest requires no additional
> justification. It is the fact of the lawful arrest which establishes the
> authority to search, and we hold that in the case of a lawful
> custodial arrest a full search of the person is not only an exception
> to the warrant requirement of the Fourth Amendment, but is also a
> "reasonable" search under that Amendment.

Id. at 235.

The Supreme Court determined that the police officer conducting the search at issue in Robinson was entitled to search the contents of a cigarette package that he found in the suspect's pocket while searching him incident to a lawful arrest. See id. at 236. Although the officer did not search the suspect to ensure his own personal safety or to preserve evidence of the offense for which the suspect was arrested, see Chimel v. California, 395 U.S. 752, 762-63 (1969), the

Court concluded that the arrest itself provided justification for the search.  See Robinson, 414

U.S. at 236.  Thus, under Robinson, an officer could search the contents of an object found on a

suspect's person during a search incident to his or her lawful arrest.

In Riley, the Supreme Court limited Robinson in the context of cell phone searches.[4]  See

Riley, 134 S. Ct. at 2484-85.  Riley, however, was decided after Detective Fogarty conducted the

search at issue in the present case.  Detective Fogarty searched Rivera's cell phone on October 2,

2013, but the Supreme Court did not issue its decision in Riley until June 25, 2014, over eight

months after the search in question occurred.  Accordingly, Robinson governed the scope of

permissible searches incident to arrest at the time the search was conducted in the present case,

and Detective Fogarty could have reasonably based his conduct on its precedent.[5]

---

[4] In Riley, the Supreme Court noted that cell phones "differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person," Riley, 134 S. Ct. at 2489, in part because they "place vast quantities of personal information literally in the hands of individuals," id. at 2486.  The Court also explained that modern cell phones "are based on technology nearly inconceivable just a few decades ago, when . . . Robinson was decided."  Id. at 2484.  In an effort to adapt Fourth Amendment jurisprudence to the pervasive and quickly-evolving technology of cell phones, the Supreme Court concluded that police generally must obtain a warrant before searching a cell phone incident to an individual's arrest.  Id. at 2493.

[5] On appeal, Rivera contends that Detective Fogarty could not have reasonably believed that the warrantless search of his cell phone was permissible because other Virginia Beach police officers obtained warrants to search cell phones seized incident to arrest before Riley.  At the suppression hearing in this case, however, Rivera's attorney conceded that he could only verify that Virginia Beach police officers obtained warrants to search cell phones seized incident to arrest in May 2014, one month before the Supreme Court issued the Riley decision.  The fact that officers sought warrants to search cell phones at a time when a decision in Riley was imminent does not imply that officers sought similar warrants seven months earlier.  At the time that Detective Fogarty searched Rivera's cell phone, the Supreme Court had not yet granted certiorari in Riley or its companion case.  See Riley v. California and United States v. Wurie, 134 S. Ct. 999 (2014) (granting certiorari on January 17, 2014).

Additionally, we note that the subjective intent of the officers is not the relevant inquiry in this case.  We must determine whether a police officer acts "with an *objectively* 'reasonable good-faith belief' that their conduct is lawful."  Davis, 131 S. Ct. at 2427 (emphasis added) (citing Leon, 468 U.S. at 909); see also Herring, 555 U.S. at 145 ("The pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers." (citation omitted)).

We acknowledge that Robinson did not expressly apply to the search of cell phones incident to an individual's arrest. In Riley itself, however, the Court acknowledged that Robinson was the only decision from the Supreme Court that applied search incident to arrest analysis "to a search of the contents of an item found on an arrestee's person." Id. at 2488. Although the Court concluded that a deviation from Robinson was necessary to protect an individual's privacy interest in the voluminous information contained in his or her cell phone, the Court expressly recognized that "a mechanical application of Robinson might well support the warrantless searches at issue [in Riley]." Id. at 2484.

Ample persuasive authority supported the warrantless search of a cell phone incident to a lawful arrest before the Riley decision. Although no Virginia law expressly addressed the issue, the Fourth Circuit upheld the warrantless search of a cell phone incident to arrest in United States v. Murphy, 552 F.3d 405, 410-12 (4th Cir. 2009). At the time that Officer Fogarty searched Rivera's cell phone, the Fifth, Seventh, Eighth, and Tenth Circuits had reached similar conclusions. See United States v. Rodriguez, 702 F.3d 206, 209-10 (5th Cir. 2012); United States v. Flores-Lopez, 670 F.3d 803, 809-10 (7th Cir. 2012); Silvan W. v. Briggs, 309 F. App'x. 216, 225 (10th Cir. 2009); United States v. Mendoza, 421 F.3d 663, 668 (8th Cir. 2005). In addition, several state courts of last resort had upheld warrantless searches of at least some of the digital content of cell phones incident to arrest. See, e.g., People v. Diaz, 244 P.3d 501, 511 (Cal. 2011); Hawkins v. State, 723 S.E.2d 924, 926 (Ga. 2012); Commonwealth v. Phifer, 979 N.E.2d 210, 216 (Mass. 2012). Several courts, however, questioned the validity of warrantless searches of cell phones incident to arrest. See, e.g., United States v. Wurie, 728 F.3d 1 (1st Cir. 2013); Smallwood v. State, 113 So. 3d 724, 735-36 (Fla. 2013); State v. Smith, 920 N.E.2d 949, 953-56 (Ohio 2009).

While some courts had questioned the applicability of <u>Robinson</u> to the search of cell phones incident to arrest before the <u>Riley</u> decision, <u>Robinson</u> stood in a similar position as the overruled precedent at issue in <u>Davis</u>. Before <u>Gant</u> limited <u>Belton</u>, courts differed on specific aspects of the searches of vehicles incident to arrest that <u>Belton</u> permitted. <u>See Gant</u>, 556 U.S. at 345-46. Courts were "at odds regarding how close in time to the arrest and how proximate to the arrestee's vehicle an officer's first contact with the arrestee must be . . . and whether a search is reasonable when it commences or continues after the arrestee has been removed from the scene." <u>Id.</u> Furthermore, at least eight states had declined to follow a broad reading of <u>Belton</u> before the Supreme Court's decision in <u>Gant</u>. <u>See id.</u> at 347 n.8. Nevertheless, the Supreme Court concluded in <u>Davis</u> that <u>Belton</u> constituted precedent that "was widely understood to have set down a simple, bright-line rule." <u>Davis</u>, 131 S. Ct. at 2424.

When we read <u>Robinson</u> in conjunction with <u>Riley</u> and the other persuasive authority addressing the warrantless search of cell phones incident to arrest, we conclude that a police officer could have reasonably believed that <u>Robinson</u> authorized the warrantless search at issue in the present case. <u>Robinson</u> constituted the only authority from the Supreme Court of the United States addressing the search of the contents of an item seized incident to an individual's arrest, and the Supreme Court acknowledged in <u>Riley</u> that <u>Robinson</u> could support the warrantless search of cell phones. Additionally, ample persuasive authority from across the nation supported the warrantless search of a cell phone incident to arrest.

We conclude that the exclusion of the evidence obtained from Rivera's cell phone in this case would not deter future Fourth Amendment violations. <u>Robinson</u> provided binding precedent that generally supported the warrantless search of Rivera's cell phone incident to his

arrest.[6]  While Robinson did not specifically apply to cell phones, persuasive authority from the Fourth Circuit and other courts upheld warrantless searches of cell phones incident to arrest when they expressly addressed the issue.  Accordingly, in the present case police officers were confronted with binding authority that generally authorized a practice and persuasive authority that authorized the practice under a specific factual situation.  Under these circumstances, we conclude that an officer could have objectively believed that the search of Rivera's cell phone incident to his arrest was authorized by sufficient precedent.

Like the police officers in Davis, Detective Fogarty acted with an "objectively reasonable good-faith belief'" that his conduct was lawful.  See id. at 2427; see also Leon, 468 U.S. at 909. Detective Fogarty did not violate Rivera's Fourth Amendment rights "deliberately, recklessly, or with gross negligence."  Davis, 131 S. Ct. at 2428; see also Herring 555 U.S. at 144.  When Detective Fogarty searched Rivera's cell phone, an officer could have reasonably believed that Robinson and other precedent authorized the search.  Applying the exclusionary rule to exclude the evidence obtained from the search of Rivera's cell phone under these circumstances would not substantially deter future police misconduct.  For these reasons, we conclude that the Fourth Amendment violation in this case did not require the exclusion of the evidence obtained from the warrantless search of Rivera's cell phone.

---

[6] Applying Davis, the Court of Appeals of Maryland recently concluded that the exclusionary rule did not apply when officers searched cell phones incident to arrest in reliance on the binding authority of Robinson.  See Spence v. State, 118 A.3d 864 (Md. 2015); Demby v. State, 118 A.3d 890 (Md. 2015).  The Seventh Circuit reached the same conclusion in United States v. Gary, 790 F.3d 704 (7th Cir. 2015).  We also note that the Fourth Circuit applied Davis to evidence obtained through the warrantless search of a cell phone in United States v. Eccleston, No. 13-4133, 2015 U.S. App. LEXIS 13376 (4th Cir. July 31, 2015), but based its decision on the officer's reliance on Murphy, 552 F.3d at 410-12.

### III. CONCLUSION

When Detective Fogarty searched Rivera's cell phone without a warrant incident to his arrest, such a search was generally authorized by the binding authority of <u>Robinson</u> and specifically authorized by ample persuasive authority. Under <u>Davis</u>, <u>Herring</u>, and other precedent concerning the application of the exclusionary rule to evidence obtained under a reasonable "good faith" belief that a search was authorized by law, we hold that the exclusionary rule does not apply to the evidence obtained from the warrantless search of Rivera's cell phone. Accordingly, the circuit court's decision denying Rivera's motion to suppress the evidence obtained from the warrantless search of his cell phone is affirmed.

<u>Affirmed.</u>